**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TRUNQATE, LLC, | |
| Plaintiff, | |
| v. | Case No. 1:11-cv-04709 |
| ARAMARK CORPORATION; BEST BUY CO., INC.; DOW CHEMICAL COMPANY; HEWLETT PACKARD COMPANY; HYATT CORPORATION; MERCK & CO., INC. n/k/a MERCK SHARP & DOHME CORP.; REALMATCH INC.; TALEO CORPORATION; UNITED AIRLINES and WHIRLPOOL CORPORATION, | Judge Ruben Castillo |
| Defendants. | |

**<u>DEFENDANTS' BRIEF ON MISJOINDER</u>**

## TABLE OF CONTENTS

I.  INTRODUCTION ......................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................ 1

III. ARGUMENT ............................................................................................................... 3

A.  The Claims Against Taleo Should Be Severed From The Claims Against
    The Taleo Customers Because They Are "Peripheral Defendants" ...................... 3

B.  Once Severed, The Claims Against Taleo Should Be Transferred To The
    Northern District of California............................................................................. 6

    1.  Venue Is Proper In The Northern District of Illinois And In The
        Northern District of California................................................................ 6

    2.  The Convenience Of The Parties And Witnesses Weighs Heavily
        In Favor Of Transfer To The Northern District of California ................... 6

        a.  Plaintiff's Choice Of Forum ......................................................... 7

        b.  The Situs Of The Material Events ................................................. 7

        c.  The Relative Ease Of Access To Sources Of Proof....................... 8

        d.  Convenience Of The Parties .......................................................... 8

        e.  Convenience Of The Witnesses ..................................................... 9

    3.  Transfer To The Northern District of California Serves The
        Interests of Justice.......................................................................... 9

C.  The Claims Against the Taleo Customers Should Be Dismissed, Stayed,
    or Transferred...................................................................................................... 10

D.  If The Court Does Not Sever, It Should Take Steps To Manage The
    Schedule To Ensure Fair Resolution Of The Disputes ........................................ 14

IV. CONCLUSION............................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Air Line Pilots Ass'n v. Miller*,
    523 U.S. 866 (1998)............................................................................11

*Ambrose v. Steelcase, Inc.*,
    No. 02 C 2753, 2002 WL 1447871 (N.D. Ill. July 3, 2002) ............................................3, 8, 11

*Amoco Oil Co. v. Mobil Oil Corp.*,
    90 F. Supp. 2d 958 (N.D. Ill. 2000) .....................................................................7

*Anchor Wall Systems, Inc. v. R & D Concrete Products, Inc.*,
    55 F. Supp. 2d 871 (N.D. Ill. 1999) .................................................................6, 7, 9

*Brandon Apparel Group, Inc. v. Quitman Mfg. Co.*,
    42 F. Supp. 2d 821 (N.D. Ill. 1999) .....................................................................7, 9

*Calmedica, LLC v. Novoste Corp.*,
    No. 03 C 3924, 2004 WL 413296 (N.D. Ill. Jan. 30, 2004) ...........................................3, 4, 5

*Coffey v. Van Dorn Iron Works*,
    796 F.2d 217 (7th Cir. 1986) ...........................................................................6, 9

*Eon-Net LP v. Flagstar Bancorp*,
    653 F.3d 1314 (Fed. Cir. 2011)..........................................................................5

*Glenayre Elecs., Inc. v. Jackson*,
    443 F.3d 851 (Fed. Cir. 2006)........................................................................11, 12

*Honeywell Inter. Inc. v. Audiovox Commc'ns Corp.*,
    2005 WL 2465898 (D. Del. May 19, 2005)...........................................................11, 13

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009).........................................................................8

*In re Hoffmann-La Roche*,
    587 F.3d 1333 ..........................................................................................7, 10

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009)..........................................................................9

*In re TS Tech*,
    551 F.3d 1315 ..........................................................................................7

*Lincoln Electric Co. v. Miller Electric Mfg. Co.*,
    2011 WL 976586 (N.D. Ohio Mar. 17, 2011) ...................................................................11, 13

*Portfolio Techs., Inc. v. Intellix, Inc.*,
    2005 WL 1189604 (W.D. Mich. May 19, 2005) ........................................................................11

*Rice v. Sunrise Express, Inc.*,
    209 F.3d 1008 (7th Cir. 2000) ................................................................................................3

*Rudd v, Lux Prods. Corp.*,
    No. 09 C 6957, 2011 WL 148052 (N.D. Ill. Jan. 12, 2011) ....................................................10

*Safe Bed Techs. Co. v. KCI USA, Inc.*,
    No. 02 C 97, 2002 WL 1769991 (N.D. Ill. July 31, 2002) .......................................................3

*Spread Spectrum Screening, LLC v. Eastman Kodak Company*,
    No. 10 C 1011, 2010 WL 3516106 (N.D. Ill. Sept. 1, 2010)........................................... passim

**FEDERAL STATUTES**

28 U.S.C. § 1400(b) .........................................................................................................................6

28 U.S.C. § 1404(a) .................................................................................................................1, 6, 15

**RULES**

Federal Rule of Civil Procedure 20(a) .............................................................................................3

Federal Rule of Civil Procedure 21 .......................................................................................1, 3, 10

## I. INTRODUCTION

At the October 6, 2011, Status Hearing the Court ordered the parties to brief the issue of joinder or misjoinder. *See* D.I. 52. Joinder is not appropriate in this case. Pursuant to Federal Rule of Civil Procedure 21, the claims asserted by Plaintiff Trunqate, LLC ("Trunqate") against Defendant Taleo Corporation ("Taleo") should be severed from the claims asserted against Defendants Aramark Corporation, Best Buy Co., Inc.[1], The Dow Chemical Company, Hewlett-Packard Company, Hyatt Corporation, Merck & Co., Inc. n/k/a Merck Sharp & Dohme Corp., United Airlines and Whirlpool Corporation (collectively, "Taleo Customers") on the grounds that the Taleo Customers are "peripheral defendants," and are not necessary parties to the underlying dispute between Trunqate and Taleo.[2] Because this Court is an inconvenient forum for Taleo, and Trunqate's only basis for selecting this forum is the inclusion of two peripheral defendants, the Court should transfer the case against Taleo to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a). After severing Taleo, the Court should dismiss or stay the case as to the remaining defendants or transfer the claims against the Taleo Customers to more appropriate forums.

## II. STATEMENT OF FACTS

It appears that Trunqate is a patent holding company located in Pasadena, California. It is the current assignee of U.S. Patent No. 5,592,375 (the "'375 Patent" or "patent-in-suit").

---

[1] Best Buy Co., Inc., is improperly named in the Complaint. Best Buy Co., Inc., is working with Plaintiff to substitute Best Buy Stores, LP and BBY Services, Inc.

[2] Trunqate represented at the Status Hearing that it may accuse products other than Taleo's product. It has yet to do so. In fact, Trunqate just served document requests asking the Taleo Customers to identify such other products. It is clear that this discovery is nothing more than a "fishing expedition" and Trunqate has no basis to contend that this case is about anything other than the Taleo product.

Trunqate does not commercialize the patent-in-suit. It merely purchased the '375 patent for the purpose of asserting it in infringement lawsuits. Trunqate has no ties to Illinois. In fact, it appears that Trunqate's only ties are to California.

Taleo is a California-based provider of talent management systems that assist customers in various aspects of the human resources process, including recruiting. *See* Decl.[3], ¶ 3. Although it has offices around the country, its principal place of business is in Dublin, California, near San Francisco. *See id.* It also has significant facilities in Quebec City, Quebec. *See id.* Taleo is incorporated in Delaware. *See id.* During the past decade, Taleo has grown tremendously and now employs nearly 1300 people, of which 315 are located in California and 315 are located in Quebec City, Quebec. *See id.* Taleo offers its talent management systems through the Internet on servers hosted in Chicago and elsewhere. *See id.* at ¶ 4. The leadership and management of sales activities for Taleo's systems and services are handled by employees in California and Quebec. *See id.* Most of Taleo's design, development, testing, and research activities occur in California, Florida, and Quebec. *See id.* Taleo's corporate records and documents (including design and development documents) are maintained in California and Quebec. *See id.* at ¶ 5. Most of the individuals knowledgeable about its allegedly infringing activities reside in California or Quebec. *See id.* at ¶¶ 3-4.

The Taleo Customers represent a small percentage of Taleo's total customers. *See id.* at ¶ 6. Taleo's customers do not have substantive knowledge or information regarding the design, development or operation of Taleo's talent management systems. *See id.* at ¶ 7. The Taleo Customers each use Taleo's product in generally the same way. *See id.*

---

[3] As used herein, the term "Decl." is a reference to the Declaration of Michael Radovancevich in support of Defendants' Brief on Misjoinder, filed herewith.

## III.    ARGUMENT

### A.    The Claims Against Taleo Should Be Severed From The Claims Against The Taleo Customers Because They Are "Peripheral Defendants"

"Under Fed. R. Civ. P. 20(a), parties *may* be joined as defendants 'where the claims arise out of the same transaction or occurrence or the same series of transactions or occurrences and where common questions of law or fact are presented.'"  *Spread Spectrum Screening, LLC v. Eastman Kodak Company*, No. 10 C 1011, 2010 WL 3516106, at *2 (N.D. Ill. Sept. 1, 2010) (emphasis added).  However, even if joinder is technically permitted, it is not always appropriate. Fed. R. Civ. P. 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  "The court may also sever any claim against a party."  *Id*.  Even without a finding of misjoinder, the court has broad discretion under Rule 21 to sever claims. *See Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).  Where, as here, there are discrete claims, the court has discretion to sever them.  *Id*.

Severing and transferring Taleo is the best course of action in this case.  In patent infringement cases, "[i]t is not uncommon for courts to sever claims by patent holders against peripheral defendants in order to transfer the litigation to a more appropriate forum."  *Calmedica, LLC v. Novoste Corp.*, No. 03 C 3924, 2004 WL 413296, at *1 (N.D. Ill. Jan. 30, 2004) (severing infringement claims against a hospital that used an accused medical device from claims against the manufacturer); *see also Spread Spectrum*, 2010 WL 3516106, at *3 (severing infringement claims against customers that used an accused software from claims against the manufacturer); *Safe Bed Techs. Co. v. KCI USA, Inc.*, No. 02 C 97, 2002 WL 1769991, (N.D. Ill. July 31, 2002) (severing infringement claims against a hospital that leased an accused product from claims against the manufacturer); *Ambrose v. Steelcase, Inc.*, No. 02 C 2753, 2002 WL 1447871, (N.D. Ill. July 3, 2002) (severing infringement claims against a retailer that sold an accused computer

accessory from claims against the manufacturer).

The Taleo Customers are "peripheral" to this action and the claims against them should be severed from the claims against Taleo. Each of the remaining eight defendants is merely one of many licensees and users of Taleo's accused system. *See* Decl., ¶ 6. "There is nothing particularly special about determining the alleged infringement of [the Taleo Customers] as compared to any of [Taleo's] other customers using the [Taleo] system." *Calmedica*, 2004 WL 413296, at *2. As in *Calmedica*, "[t]his is not a case in which a patent holder has sued a manufacturer along with its top purchasers or distributors." *Id.* The Taleo Customers have no substantive knowledge or information regarding the design, development, or operation of the accused system. *See* Decl., ¶ 7.

The patent-in-suit describes and claims a very specific algorithm for searching a database and performing the "behind the scenes" processing of the results. Trunqate's infringement claims will turn on the confidential details of Taleo's software specifically unavailable to the Taleo Customers. Given the nature of the technology at issue in this lawsuit, it is unlikely that any of Taleo's customers even understand how the accused system works at a level of detail necessary to aid in the prosecution of the lawsuit. In fact, Taleo hosts its product on its servers and makes it available to the Taleo Customers over the Internet, making it impossible for the Taleo Customers to access Taleo's source code or learn about Taleo's product on a detailed technical level. Decl. ¶ 4. In short, the Taleo Customers "have nothing substantive to offer during plaintiff's action against" Taleo, "do not even understand how the product software actually works and will not be helpful to determine whether [Taleo's] product infringes." *Spread Spectrum*, 2010 WL 3516106, at *3. Thus they are "merely peripheral" to the litigation between Trunqate and Taleo and joinder is not appropriate. *Id.*

Furthermore, these particular Taleo Customers are not necessary for Trunqate to prove indirect infringement claims against Taleo. As the *Calmedica* court held, a plaintiff "can establish the direct infringement element of its inducement claims by proving that anyone practiced the patented method." 2004 WL 413296, at *2. Here, as in *Calmedica*, Trunqate can establish Taleo's indirect infringement by showing that any Taleo customer directly infringed the patent-in-suit through its use of the accused system. Therefore, the Taleo Customers are not necessary parties to Trunqate's action against Taleo.

While joinder of Taleo with the Taleo Customers will not advance Trunqate's case against Taleo, it will place a tremendous and undue burden on the Taleo Customers. Even though they will not be able to contribute meaningfully to the substance of Trunqate's case, Trunqate anticipates extensive discovery of the Taleo Customers anyway. Indeed, Trunqate has asked the Court to allow it to depose each of the Taleo Customers for 18 hours apiece, for a total of 144 hours of deposition all over the country. D.I. 51. Trunqate also is seeking extensive document discovery for no other reason than to put litigation pressure on the Taleo Customers to settle. *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (affirming the district court's finding that a patent holding company "acted in bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement from" the defendant). For example, even though the Court has not yet opened discovery[4], Trunqate has already requested every communication, external and internal, that each Taleo Customer has had regarding the Taleo system. *See* Trunqate LLC's First Request for Production to Defendants, Request for Production No. 4 (Ex. 1). Such a request is likely to encompass millions of pages of

---

[4] With the exception of the October 19, 2011, date for Initial Disclosures, the Court rejected the parties' proposed discovery schedule, including the commencement of discovery. *See* D.I. 52.

documents – of which few, if any, will be relevant to the claims and defenses in this action. Because Trunqate's real dispute is with Taleo, its claims against Taleo should be severed so they can be resolved in an efficient manner without unduly burdening the peripheral customers.

### B. Once Severed, The Claims Against Taleo Should Be Transferred To The Northern District of California

Under 28 U.S.C. § 1404 (a), a court may transfer a matter "for the convenience of the parties and witnesses, in the interest of justice." In determining whether to grant a motion to transfer venue, a court must consider the totality of the circumstances, and weigh both the interests of the parties and the interests of the court. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986); *Anchor Wall Systems, Inc. v. R & D Concrete Products, Inc.*, 55 F. Supp. 2d 871, 873 (N.D. Ill. 1999). A court may transfer a case to another district when "(1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses and the interest of justice." *Anchor*, 55 F. Supp. 2d at 873. The decision to transfer is in a court's sound discretion. *Coffey*, 796 F.2d at 219.

### 1. Venue Is Proper In The Northern District of Illinois And In The Northern District of California

The parties do not dispute that venue is proper in this District. With severance of the claims against the Taleo Customers, venue is also proper in the Northern District of California. Under 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Taleo's headquarters and principal place of business are located in Dublin, California. Therefore, this action could have been brought in the transferee district.

### 2. The Convenience Of The Parties And Witnesses Weighs Heavily In

**Favor Of Transfer To The Northern District of California**

To determine the convenience of a venue, courts evaluate: "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses." *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000); *see also Brandon Apparel Group, Inc. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999). These factors strongly favor transfer of the action against Taleo to the Northern District of California.

### a.      Plaintiff's Choice Of Forum

Trunqate's choice of forum should be given no weight. Like Taleo, Trunqate does not reside here and it has no apparent connection to this forum. In cases where the plaintiff is not a resident of the Northern District of Illinois, this Court has held that the plaintiff's choice of forum has "diminished significance" and "is merely another factor in the mix and is given no additional weight." *Anchor*, 55 F. Supp. 2d at 874; *accord Spread Spectrum*, 2010 WL 3516106, at *4 ("Because the Northern District of Illinois is not the plaintiff's home forum, plaintiff's choice of forum is entitled to little weight and is not a significant factor in determining whether the transferee district is more convenient to both parties and witnesses.").

### b.      The Situs Of The Material Events

Taleo's headquarters are in Dublin, California. The daily operations involving Taleo's products, including research, development, and marketing operations, all primarily take place at Taleo's Dublin headquarters, Florida, and Quebec. *See* Decl., ¶ 4. To the extent internet sales are considered nationwide rather than local, such sales are insufficient as a matter of law to establish venue. *See In re Hoffmann-La Roche*, 587 F.3d 1333, 1338 (finding that "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue"); *In re TS Tech*, 551 F.3d 1315, 1321. Thus, in this case, the situs of material events is

7

located in the Northern District of California.

### c. The Relative Ease Of Access To Sources Of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1343-45 (Fed. Cir. 2009). Taleo's headquarters, many of its likely witnesses, and many relevant records and documents related to Trunqate's claims are located in Dublin, California. *See* Decl., ¶¶ 3-5. Any evidence not in California is in Quebec, not Illinois. All management and decision making regarding Taleo's research, development, marketing and sales activities occur in California, Florida, and Quebec – not in Illinois. *See id.* at ¶ 4. Trunqate, along with all of its documents and witnesses, is also in California, not Illinois. In light of the relative ease of access to the sources of proof, this factor strongly favors transfer.

### d. Convenience Of The Parties

"In evaluating the convenience of the litigants, the court considers their residences and their ability to bear the expenses of litigating in a particular forum." *Ambrose*, 2002 WL 1447871, at *4. Here, there is no question that the Northern District of California is a much more convenient venue for this action compared to the Northern District of Illinois. Both parties are domiciled in California, Taleo in the Northern District and Trunqate in the Central District. *See* Decl., ¶ 3. If this case proceeds in the Northern District of Illinois, both parties will suffer the inconvenience and significant cost associated with travel to and from their home state to Illinois. Furthermore, given that Trunqate deliberately chose to inconvenience itself by filing suit in a foreign district, it cannot now argue that it will somehow be more inconvenienced if this action is transferred to the Northern District of its home state. Therefore, the convenience of the parties weighs heavily in favor of transfer.

### e. Convenience Of The Witnesses

The Northern District of California is the most convenient venue for the potential witnesses in this matter. "The convenience of the witnesses is often viewed as the most important factor in the transfer balance." *Brandon Apparel*, 42 F. Supp. 2d at 834 (quoting *Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989)). Many of Taleo's likely witnesses reside in Northern California. *See* Decl., ¶¶ 3-4. The distance between their residences and the courthouse in Chicago, Illinois, would create significant problems for these individuals, including lengthy travel times, unnecessary meal and lodging expenses, and extended absences from their regular employment. "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (citations omitted).

Indeed, no identified witness, or potential third-party witness, resides in this District or anywhere in Illinois. For example, based on the face of the patent, the inventors of the '375 patent, and an attorney(s) from Fish & Richardson P.C. who prosecuted the '375 patent, likely reside in or around Boston, Massachusetts. Other potential third party witnesses include previous owners of the '375 patent, who are likely located in Arizona. *See* Patent Assignment Abstract of Title (Ex. 2). Thus, third party witnesses "are less significant to the court's inquiry because neither choice of venue would afford the parties greater subpoena power." *Anchor*, 55 F. Supp. 2d at 874. The convenience of the witnesses weighs heavily in favor of transfer.

### 3. Transfer To The Northern District of California Serves The Interests of Justice

The "interest of justice" factor pertains to the "efficient administration of the court system." *Coffey*, 796 F.2d at 220-21. Here, courts consider "(1) the court's familiarity with

applicable law; (2) speed at which the case will proceed to trial; and (3) local interest in having controversies decided at home." *Rudd v, Lux Prods. Corp.*, No. 09 C 6957, 2011 WL 148052, at *5 (N.D. Ill. Jan. 12, 2011).

Each of these three sub-factors, as applied to this action, is neutral or weighs in favor of transfer. First, both the Northern District of Illinois and the Northern District of California have significant experience and familiarity with patent cases, and each has specialized local patent rules. This factor is neutral. Second, the median time from filing to trial is 25.5 months in the Northern District of California and 23.3 months in this District. *See* statistics available at http://www.uscourts.gov/uscourts/Statistics/StatisticalTablesForTheFederalJudiciary/2010/dec10 /C05Dec10.pdf (Ex. 3). This litigation has just begun, the parties have not exchanged contentions, and discovery has not commenced. Therefore, this factor is neutral. Third, for the reasons detailed above, the Northern District of California has a meaningful local interest in adjudicating this matter between two California companies, while the Northern District of Illinois does not. Where, as here, "there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338. This factor favors transfer. Therefore, transfer to the Northern District of California would serve the interests of justice.

### C.    The Claims Against the Taleo Customers Should Be Dismissed,  Stayed, or Transferred

After severing and transferring the action against Taleo, the Court should dismiss the claims against the Taleo Customers without prejudice. "[T]he court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21. As explained above, the dispute is really between Trunqate and Taleo and the Taleo Customers are merely peripheral. Since the alleged infringement by the Taleo Customers is wholly based on use of the Taleo product, the "single

damages recovery rule" will preclude Trunqate from recovering any additional damages from the Taleo Customers. *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) (holding that a patentee could not sue users for damages because actual damages covering the use of the product had already been recovered from the manufacturer). Thus, there is nothing to be gained from maintaining the claims against the Taleo Customers.

Alternately, the Court should stay the action as to the Taleo Customers. *See, e.g., Spread Spectrum*, 2010 WL 3516106, at *6 (staying action as to customers after manufacturer severed and transferred); *Ambrose*, 2002 WL 1447871, at *6-7 (same). "'The power to stay proceedings is incidental to the power inherent in every federal court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants.'" *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n. 6 (1998) (quoting *Landis v. North American Co*., 299 U.S. 248, 254-55 (1936)). Courts considering a stay must "exercise [their] judgment" and must "weigh competing interests and maintain an even balance" before reaching a conclusion. *Id.*

Before granting stays, courts consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *See Lincoln Electric Co. v. Miller Electric Mfg. Co*., 2011 WL 976586, at *2 (N.D. Ohio Mar. 17, 2011); *Honeywell Inter. Inc. v. Audiovox Commc'ns Corp*., 2005 WL 2465898, at *4 (D. Del. May 19, 2005) (staying a patent action with respect to non-manufacturing defendants after consideration of these factors); *Portfolio Techs., Inc. v. Intellix, Inc.*, 2005 WL 1189604, *3-5 (W.D. Mich. May 19, 2005) (staying a patent action with respect to a distributor, pending resolution of an action against a manufacturer involving the same patent and the same accused products). These factors strongly favor a stay.

11

Staying the claims against the Taleo Customers pending resolution of the claims against Taleo will do more than merely "simplify the issue in question and the trial of the case" – it will completely determine the outcome of the liability and damages issues in the claims against the Taleo Customers[5]. If Taleo proves its non-infringement and/or invalidity defenses, then Trunqate's claims against the Taleo Customers will necessarily fail as a matter of law and be subject to dismissal with prejudice. If Trunqate prevails against Taleo, it will be able to fully recover any damages from Taleo. Furthermore, as explained above, Trunqate will not be able to recover any additional damages from the Taleo Customers. *See Glenayre*, 443 F.3d at 864. Therefore, it would be duplicative and a significant waste of time and resources for the parties and the Court to litigate the same patent asserted against the same product prior to the resolution of the claims against Taleo.

A stay will not cause prejudice to Trunqate. Instead, it is in the interest of all parties and the Court to avoid burdensome, duplicative and likely unnecessary litigation. There is nothing to suggest that Taleo could not pay a judgment should Trunqate prevail. As explained above, recovery from Taleo would constitute complete recovery. On the other hand, if the claims against the Taleo Customers are not stayed, the Taleo Customers will be severely prejudiced. Trunqate has already served extensive discovery requests intended to harass and put settlement pressure on Taleo and its customers. Thus, the Taleo Customers will undergo significant disruption defending against allegations of infringement directed primarily at Taleo. They also will be forced to engage in unnecessary and duplicative discovery on claims for damages that

---

[5] Trunqate's statements that there may be more products at issue than just Taleo's product should not prevent a stay. Trunqate was obligated to conduct a pre-suit investigation before bringing suit. If it had a basis to claim infringement through other products, it would have done so. The case against the Taleo Customers should not be permitted to proceed merely to allow Trunqate to conduct its fishing expedition.

will likely be paid by Taleo. This factor strongly favors a stay as to the Taleo Customers.

Moreover, discovery is not complete – it has not even started – and a trial date has not been set. Because this action is in its earliest stages prior to the significant expenditure of any time or resources by the parties or this Court, a stay is particularly appropriate. *Lincoln Electric*, 2011 WL 976586, at *2. Here, the Defendants' Answers were filed a month ago on September 16, 2011 (D.I. 34, 35, 37, 39, 41, 43, 45, 47, 49), and the Court is waiting to resolve the joinder issue before setting a discovery schedule. Courts have routinely held that this preliminary juncture of a case is the opportune moment for issuance of a stay. *See, e.g., Honeywell*, 2005 WL 2465898, at *9 (in granting a stay, the court noted favorably that the request for stay came before discovery began).

In sum, a stay of Trunqate's claims against the Taleo Customers is particularly appropriate here because resolution of Trunqate's claim against Taleo will necessarily resolve the claims against the Taleo Customers, Trunqate will fully recover, if at all, from Taleo, and will not be prejudiced by a stay, and discovery has not started and no trial date has been set.

Alternatively, if the Court does not stay the action as to the Taleo Customers, it should transfer the claims against all of the Taleo Customers except for Hyatt and United Airlines[6]. With the exception of these two defendants, the Taleo Customers do not have ties to this forum sufficient to keep them here. Aramark is located in Pennsylvania and should be transferred to the Eastern District of Pennsylvania. Best Buy is located in Minnesota and should be transferred to the District of Minnesota. Dow is located in Michigan and should be transferred to the

---

[6] While Hyatt and United Airlines have principal places of business here, it is clear that they have been joined merely to manufacture venue and have nothing further to add. *See Spread Spectrum,* 2010 WL 3516106, at *3 ("[I]t is obvious that plaintiff has attempted to establish proper venue in the Northern District of Illinois by adding Kodak's Customers to the instant action.").

Eastern District of Michigan. HP is located in California and should be transferred to the Northern District of California. Merck Sharp & Dohme Corp. is located in New Jersey and should be transferred to the District of New Jersey. Whirlpool is located in Michigan and should be transferred to the Western District of Michigan.

The reasons favoring transfer are similar to those above for Taleo. Trunqate has no interest in Illinois. Neither do any of these defendants. Their documents and witnesses, to the extent that any of that information is relevant, are located in their respective headquarters, not in Illinois. Thus, the factors addressing the location of relevant information and the convenience of the witnesses favor transfer to districts near each defendant. Any Illinois activities conducted by these defendants are not specific to Illinois and instead are part of their activities conducted throughout the country, including the transferee districts. Illinois has no specific interest in this dispute, while the transferee districts have specific interests in resolving disputes involving companies residing in their districts. Each of the transferee venues is sophisticated in resolving patent disputes. Thus, Trunqate's claims against all of the Taleo Customers, except Hyatt and United, should be transferred.

> **D.** **If The Court Does Not Sever, It Should Take Steps To Manage The Schedule To Ensure Fair Resolution Of The Disputes**

If the Court permits Trunqate to join all nine defendants together in the same action, the Court should take steps to manage the case to ensure that the Taleo Customers, who likely cannot contribute meaningfully to the information Trunqate needs to prosecute its claims, are not unduly burdened. The Court seeks an aggressive schedule to resolve the dispute quickly. Conducting extensive, burdensome, and largely irrelevant discovery of the Taleo Customers (as Trunqate's actions suggest it will do) will run counter to quick and efficient resolution.

Even if the Court does not sever Taleo, it should still stay the case as to the Taleo

14

Customers. For the reasons stated above, staying the case as to the Taleo Customers until the real dispute, between Trunqate and Taleo, is resolved will be much more efficient and will greatly lessen the prejudice to the peripheral defendants. Staying the case will allow Trunqate and Taleo to advance the case quickly, with discovery focused on the issues that truly impact the resolution of the dispute.

If the Court does not stay the case as to the Taleo Customers, it should bifurcate the case into liability (patent infringement and invalidity) and damages phases, with discovery and trial on the damages issues stayed until the liability issues are resolved. Because the infringement dispute centers on Taleo's product, all of the liability discovery should be directed at Taleo. Thus, the liability phase will be focused and centered on a few discrete issues. On the other hand, depending on Trunqate's damages theory as to the Taleo Customers, the damages issues could dwarf the liability issues in complexity. With nine different defendants in nine different markets, it will be difficult to present damages issues at trial through one expert witness. Employing multiple experts will drive up expenses for the defendants. Moreover, even though discovery has not commenced, Trunqate has already served requests on the Taleo Customers for extensive, voluminous, and largely irrelevant information. Since Taleo has the lion's share of information relating to liability, if those requests are relevant at all, they can only be expected to net information relevant to damages. Accordingly, the Court should stay the issue of damages until liability is resolved, either through summary judgment or through trial.

## IV.    CONCLUSION

For the foregoing reasons, Trunqate's claims against Taleo should be severed for misjoinder and transferred to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a). The claims against the remaining defendants should be dismissed, stayed, or transferred.

15

DATED:  October 19, 2011

By:     /s/ David C. McKone

*Attorneys for Defendants Aramark Corporation; Best Buy Co., Inc. ; Best Buy Stores, LP; BBY Services, Inc.; Dow Chemical Company; Hewlett-Packard Company; Hyatt Corporation; Merck & Co., Inc.  n/k/a Merck Sharp & Dohme Corp.; Taleo Corporation; United Airlines and Whirlpool Corporation*

Russell J. Genet
rgenet@nixonpeabody.com
David C. McKone
dmckone@nixonpeabody.com
Lisa Yun
lyun@nixonpeabody.com
Nixon Peabody LLP
300 South Riverside Plaza, 16th Floor
Chicago, IL 60606
Telephone: (312) 425-3900
Facsimile: (312) 425-3909

Jason C. Kravitz (Admitted Pro Hac Vice)
jkravitz@nixonpeabody.com
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110-2131
Telephone: (617) 345-1000
Facsimile: (617) 345-1300

## CERTIFICATE OF SERVICE

The undersigned certifies that **DEFENDANTS' BRIEF ON MISJOINDER** was filed electronically in compliance with the General Order on Electronic Case Filing, Section III(B)(1). As such, these documents were served on all counsel who are deemed to have consented to electronic service.  Fed. R. Civ. P. 5(b)(2)(D) and Local Rule 5.9.


  /s/David C. McKone


*Attorneys for Defendants Aramark
Corporation; Best Buy Co., Inc.; Best Buy
Stores, LP; BBY Services, Inc.; Dow Chemical
Company; Hewlett-Packard Company; Hyatt
Corporation; Merck & Co., Inc.  n/k/a Merck
Sharp & Dohme Corp.; Taleo Corporation;
United Airlines and Whirlpool Corporation*